IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| KIMBERLY LANIECE WILBON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 6:23-cv-03139-MDH |
| | ) |
| DANIEL E. GOFF, DIANA K. DEAN, | ) |
| LISA G. BROWN, LESLIE R. HELL, and | ) |
| LLOYD J. AUSTIN, III, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Defendant's Motion to Dismiss for Failure to State a Claim and Lack of Jurisdiction. For reasons herein, Defendants' Motion is **GRANTED**.[1]

## BACKGROUND

*Pro Se* Plaintiff Kimberly Wilbon alleges violations of Title VII of the Civil Rights Act of 1964 (Title VII), the Family Medical Leave Act (FMLA), the National Labor Relations Act (NLRA), breach of contract, and negligence against several defendants, four of whom served as supervisors to Plaintiff during her employment as an editor.[2] Though somewhat unclear from Plaintiff's 140-page amended complaint and attached exhibits, it appears Plaintiff's allegations generally take issue with treatment she received during her time as a civilian employee of the United States Army at Fort Leonard Wood, Missouri. At times relevant to Plaintiff's allegations, Plaintiff worked as an editor in the Publications Office of the Army's Directorate of Training and

---

[1] All other pending motions are hereby Moot.
[2] Defendant Lloyd J. Austin III serves as the United States Secretary of Defense.

1

Doctrine. It remains unclear from Plaintiff's Amended Complaint if Plaintiff remains employed as an editor with the Army at Fort Leonard Wood.

On or about February 27, 2019, Plaintiff filed, and later amended, a formal EEO complaint based on alleged racial discrimination and harassment. Plaintiff's amended charge with the EEOC was based on several separate incidents: 1) on January 7, 2019 a supervisor counseled Plaintiff for actions taken by another employee and treated Plaintiff as if she did not know her job; 2) on March 12, 2019 a supervisor treated Plaintiff differently than other employees by asking her to sign an outline of meetings held; 3) on June 20, 2019 a supervisor harassed and threatened Plaintiff, denied Plaintiff *Weingarten* rights, and prevented Plaintiff from leaving the Sensitive Compartmented Information Facility Doctrine room. Plaintiff requested a hearing with an EEOC Administrative Judge (AJ), which took place around March 2-3, 2021. The AJ found in favor of the Army, concluding, in part, that Plaintiff failed to "present any probative evidence linking the challenged actions to her race and/or prior EEO activity." (Doc. 24-6 at 5). The Army adopted this finding and Plaintiff then appealed that final opinion to the EEOC, which affirmed the AJ's decision. Plaintiff's request for reconsideration was denied and Plaintiff thereafter filed the present action.

Though unclear, Plaintiff appears to allege twenty-three counts total. Counts One through Six appear to allege negligence against Daniel Goff, deputy director of Directorate of Training and Doctrine, and Diana Dean, supervisor of Maneuver Support Center of Excellence (MSCoE) G-3 Publication Section. Goff and Dean appear to have been in some type of supervisory role over Plaintiff during her employment as an editor, though the exact relationship remains unclear. Plaintiff's negligence allegations generally purport Goff and Dean failed to adequately supervise and assist Plaintiff and also had unreasonable expectations of Plaintiff's abilities as an editor. In Plaintiff's view, this somehow amounts to negligence. Counts Seven through Seventeen allege

2

breach of contract against Goff; Dean; Lisa G. Brown, chief of academic MSCoE G-3 directorate; and Leslie Hell, supervisory chief of doctrine. Like Gofff and Dean, Brown and Hell appear to have been in supervisory roles over Plaintiff while employed as an editor. Plaintiff's breach of contract claims generally reiterate her general grievances about her employers, but style these complaints as a "breach of contract." It remains unclear what contract Plaintiff believes was breached. Plaintiff's allegations reference an "implied-in-fact contract," but Plaintiff fails to specify what this means.

Plaintiff alleges six additional claims, also styled as Claims One through Six. For clarity's sake, this Court will refer to these as Additional Claim One through Additional Claim Six. Additional Claim One appears to allege Title VII race discrimination against Dean and Hell for the specific actions described above:  1) on January 7, 2019 Dean counseled Plaintiff for actions taken by another employee and treated Plaintiff as if she did not know her job; 2) on March 12, 2019 Dean treated Plaintiff differently than other employees by asking her to sign an outline of meetings held; 3) on June 20, 2019 Hell harassed and threatened Plaintiff, denied Plaintiff *Weingarten* rights, and prevented Plaintiff from leaving the Sensitive Compartmented Information Facility Doctrine room. These specific allegations and no others appear to have formed the basis of Plaintiff's EEOC complaint and appeal described above. The Amended Complaint lacks any indication that Plaintiff's other claims, including Plaintiff's other Title VII claims in Additional Counts Two and Five, have progressed through any administrative hearing process.

Additional Count Two alleges Title VII claims against Dean for subjecting Plaintiff to systemic racism. Additional Count Three contains a litany of employment-related grievances and purports to allege "workplace breach of contract, civil wrongs, defamatory statements, fraudulent misrepresentation, wrongful actions/interferences, and terminations." (Doc. 24-5 at 2). Additional

3

Count Four appears to allege violations the FMLA and Plaintiff's *Weingarten* rights. Additional Count Five appears to allege more Title VII violations, specifically based on, *inter alia*, "illegal labor practices" and "unfair workplace psychological abuse." (Doc. 24-5 at 6). Finally, Additional Count Six appears to allege civil fraud arising from someone forging or altering Plaintiff's submissions to the EEOC.

**STANDARD**

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted). The complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

**DISCUSSION**

**I.    Plaintiff's Negligence Claims are Dismissed for Lack of Jurisdiction Because Plaintiff Failed to Exhaust Administrative Remedies as Required by Statute**

As an initial matter, Plaintiff fails to identify whether she is suing the individual defendants in their official or individual capacities. Under binding precedent, this Court interprets Plaintiff's

4

allegations to be brought against the individual defendants in their official capacities alone. *Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995). A suit against a public official in his or her official capacity is treated as a suit against that official's office or agency. *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). The Federal Tort Claims Act (FTCA) is the exclusive remedy available when a plaintiff sues the Federal Government under a tort theory, such as the Amended Complaint's negligence claims in Counts One through Six. *Peak v. Small Bus. Admin.*, 660 F.2d 375, 377 (8th Cir. 1981). Under the FTCA, claimants must present their allegations to the appropriate federal agency. 28 U.S.C.A. § 2675. Claimants may not seek relief from the district court until they have received a final denial from the appropriate agency. *Id*. Plaintiff does not allege, nor does the Amended Complaint otherwise suggest, Plaintiff has filed a written administrative tort claim with the Army or any other agency. For this reason, Plaintiff's negligence claims in Counts One through Six are dismissed for lack of jurisdiction. Likewise, any other tort claim that could be read into Plaintiff's Amended Complaint is also dismissed for lack of jurisdiction, as Plaintiff has not exhausted administrative remedies.

## II.   Plaintiff's Breach of Contract Allegations are Preempted by the Civil Service Reform Act

Though Plaintiff's exact contract claims remain unclear, it proves sufficiently plain that Plaintiff's breach of contract allegations in Counts Seven through Seventeen generally take issue with her supervisors' decision making related to Plaintiff's performance as an editor. Each of Plaintiff's contract claims references a statement or action by at least one defendant in the context of a workplace disagreement. Count Seven's breach claim, for example, seems to reference Geoff's decision to take Plaintiff off an unspecified ninety-day editorial detail. Count Fifteen seems to allege Dean somehow falsified documents related to an EEO investigation, ostensibly

stemming from Plaintiff's employment. As discussed previously, however, it remains unclear what contract Plaintiff's allegations reference. At times, Plaintiff discusses an "implied-in-fact contract," though Plaintiff offers no additional explanation or allegations as to the nature of this alleged contract. At one point, Plaintiff suggests that a memo of record from the Army that reads "Effectively immediately, you will be detailed to duties as a Tasking Specialist in the MSCoE G-3 and DOTD" constitutes a contract. (Doc. 24-10 at 15). Plaintiff does not, however, explain the contents of this document nor does she assert how she believes this document makes a legally-binding contract.

Regardless, any breach of contract claim by Plaintiff against the United States is preempted by the Civil Service Reform Act (CSRA). This is true even if Plaintiff's allegations refer to breach of an employment contract with the United States Government. *Loos v. Napolitano*, 665 F. Supp. 2d 1054, 1061 (D. Neb. 2009). The CSRA was enacted by Congress to be the exclusive remedy for employment-related disputes between the United States Government and its covered employees. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012). The CSRA provides an opportunity for covered employees to seek review of employment-related decisions through the Merit System Protection Board, whose final decisions are appealable to the United States Court of Appeals for the Federal Circuit. *Elgin* at 6. The Eighth Circuit has explicitly found that, "an exclusive remedial regime such as the CSRA may neither be supplemented nor replaced by other remedies." *Gergick v. Austin*, 997 F.2d 1237, 1239 (8th Cir. 1993). It is undisputed that Plaintiff, who at the time relevant to this litigation worked as a civilian editor for the Army, was subject to the CSRA for claims against the Federal Government arising out of Plaintiff's employment. Plaintiff's breach of contract allegations in Counts Seven through Seventeen are therefore dismissed, as they are

6

Case 6:23-cv-03139-MDH    Document 70    Filed 05/28/24    Page 6 of 13

preempted by the CSRA, which grants jurisdiction to hear Plaintiff's contract allegations solely to the Merit System Protection Board.

### III. This Court Lacks Jurisdiction to Hear Plaintiff's FMLA and NLRA Allegations

In Additional Count Four, Plaintiff appears to contend Defendants have somehow violated her rights under the FMLA. Plaintiff's specific allegations make it difficult to discern how she believes the FMLA was violated. Plaintiff does not claim she was denied FMLA leave. Rather, it appears Plaintiff believes her FMLA rights were violated by Goff who allegedly made some unspecified mistake when processing Plaintiff's FMLA paperwork, but then offered to correct any mistake once it was brought to his attention. Plaintiff does not claim she was harmed by this alleged mistake. Regardless, under the doctrine of sovereign immunity, the United States Government is protected from suit unless the Government has explicitly waived this immunity. *Lane v. Pena*, 518 U.S. 187, 192 (1996) ("waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text"). There is no indication the Federal Government has waived immunity from suit by its employees under Title II of the FMLA.[3] *See Russell v. U.S. Dep't of the Army*, 191 F.3d 1016, 1018 (9th Cir. 1999) ("absence of express statutory authorization for such suits under Title II would seem to bar [the plaintiff's] FMLA claims because it is axiomatic that suits against the government are barred by sovereign immunity absent an unequivocally

---

[3] Plaintiff's FMLA claim is governed by Title II of the FMLA, which pertains to most Federal Government employees. This Court's finding that the Government has not waived sovereign immunity for suit under the FMLA pertains to Title II claims alone. In contrast, it appears Congress has waived immunity from suit for those few government employees, working mainly at the state-level, who fall under Title I of the FMLA. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 598 U.S. 339, 347 (2023) (recognizing abrogation of sovereign immunity for some government employees).

expressed waiver.). The United States Government's sovereign immunity, therefore, precludes Plaintiff's FMLA violation allegations.

Plaintiff's Additional Count Four also appears to assert that Plaintiff has somehow been denied her *Weingarten* rights. In *NLRB v. J. Weingarten Inc.*, the Supreme Court established that employees have a right to union representation during investigatory interviews. *N.L.R.B. v. J. Weingarten, Inc.*, 420 U.S. 251 (1975). It does not appear, however, Plaintiff pleads specific facts to support or even give context to Plaintiff's conclusory allegation about denial of her right to representation. No where in the text of Additional Count Four, or elsewhere in the Amended Complaint for that matter, does Plaintiff allege that the Army subjected her to an investigatory interview. Regardless, this court is similarly without jurisdiction to entertain such a claim. Failure to allow employees representation during investigative interviews may violate National Labor Relations Act Section 8(a)(1), over which the National Labor Relations Board is typically granted primary jurisdiction. *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 50 (1998). Here, Plaintiff has alleged no facts to support, or even provide context for, her blanket allegations of *Weingarten* violations. This Court, therefore, lacks jurisdiction to hear any claim arising out of an alleged Section 8(a)(1) violation.

### IV. Plaintiff Failed to Exhaust Administrative Remedies for Title VII Claims in Additional Counts Two and Five

In Additional Counts Two and Five, Plaintiff alleges violations of Title VII based on race discrimination. Specifically, under Additional Count Two Plaintiff alleges that on February 9, 2018 she was assigned work that she did not believe she could complete because she lacked knowledge about weapons. On July 30, 2018, Plaintiff received an "onerous workload" from a supervisor. Similarly, on October 15, 2018, Plaintiff was assigned to work with three subject

matter experts, while other employees were assigned to work with only one expert. Plaintiff's Amended Complaint fails to explain how Plaintiff believes these employment-related assignments and activities amount to discrimination. Nor does Plaintiff describe what, if any, specific damages she suffered as a result of these particular allegations. Under Additional Count Five, Plaintiff alleges that Hell asked Plaintiff to retract a certain sick leave request and that Hell and one of Plaintiff's coworkers stalked Plaintiff on June 20, 2019. Plaintiff does not offer additional factual allegations to support, or even add context to, claims about sick leave retraction and stalking.

More significantly, however, Plaintiff has failed to exhaust administrative remedies, as required to bring a claim under Title VII. Relevant federal regulations identify the process, including informal counseling and an internal complaint review system, that a plaintiff must pursue in order to exhaust administrative remedies. *See* 29 C.F.R. §§ 1614.104-1614.110 (identifying formal and informal steps necessary for exhausting administrative remedies in employment discrimination cases under Title VII). Among other steps, Plaintiff was required to first bring her allegations to the EEO Department in the Army to help facilitate a succinct resolution of Plaintiff's grievances. Plaintiff does not contend, and the record does not otherwise reflect, that Plaintiff exhausted her administrative remedies with respect to the specific grievances underlying Plaintiff's factual allegations in Additional Counts Two and Five. For this reason, this Court is without jurisdiction to consider Plaintiff's Title VII claims in Additional Counts Two and Five.

### V. Plaintiff Failed to State a Claim for Title VII Violations under Additional Count One

Defendants concede, and this Court agrees, Plaintiff exhausted administrative remedies with respect to the Title VII violation allegations contained in Additional Count One. Additional Count One claims are the same that form the basis of the EEOC complaint discussed in the background

section of this opinion: 1) on January 7, 2019 a supervisor counseled Plaintiff for actions taken by another employee and treated Plaintiff as if she did not know her job; 2) on March 12, 2019 a supervisor treated Plaintiff differently than other employees by asking her to sign an outline of meetings held; 3) on June 20, 2019 a supervisor harassed and threatened Plaintiff, denied Plaintiff *Weingarten* rights, and prevented Plaintiff from leaving the Sensitive Compartmented Information Facility Doctrine room. Plaintiff's administrative hearing on these specific allegations occurred around March 2-3, 2021 and the AJ eventually found in favor of the Army. After the EEOC affirmed the AJ's decision and denied reconsideration, Plaintiff filed the present action in this Court. Collectively, this demonstrates Plaintiff has sufficiently exhausted administrative remedies pertinent to her Additional Count One allegations.

Nonetheless, Plaintiff's allegations, read liberally, show Plaintiff has failed to state a claim for which relief may be granted. This Court agrees with Defendants that Plaintiff's Additional Count One allegations most closely resemble a hostile work environment claim based on racial discrimination under Title VII. To state such a claim, Plaintiff must plead "(1) she is a member of the class of people protected by the statute, (2) she was subject to unwelcome harassment, (3) the harassment resulted from her membership in the protected class, and (4) the harassment was severe enough to affect the terms, conditions, or privileges of her employment." *Mahler v. First Dakota Title Ltd. P'ship*, 931 F.3d 799, 806 (8th Cir. 2019) (quotations omitted). Here, Plaintiff's allegations fall short of demonstrating significant harassment that impacts the terms of Plaintiff's employment. "The standard for demonstrating a hostile work environment under Title VII is demanding, and does not prohibit all verbal or physical harassment and it is not a general civility code for the American workplace." *Jackman v. Fifth Jud. Dist. Dep't of Corr. Servs.*, 728 F.3d 800, 806 (8th Cir. 2013) (quotations omitted). When assessing a hostile work environment claim,

Eighth Circuit courts consider various factors including "the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance." *Wilkie v. Dep't of Health & Hum. Servs.,* 638 F.3d 944, 953 (8th Cir. 2011). Accepting Plaintiff's Additional Count One allegations as true, Plaintiff appears to have been treated only somewhat differently than other employees, in that a supervisor treated her as if she didn't know her professional responsibilities and asked her to sign meeting outlines. Collectively, this does not demonstrate the "extreme" conduct required for a successful discrimination claim under Title VII. While the allegation that Hell "threatened and harassed" Plaintiff could conceivably give rise to a hostile work environment claim, Plaintiff's Amended Complaint lacks any specific factual claims to give support to these conclusory statements. Further, Additional Count One makes clear that the alleged threatening and harassing behavior occurred only on June 20, 2019, which is insufficiently pervasive to reflect the requisite extreme conduct. For these reasons, Plaintiff has failed to state a hostile work environment claim of discrimination under Title VII.[4]

### VI. Potential Title VII Discriminatory Transfer Claim

At times, Plaintiff references various administrative transfers. For example, Ms. Wilbon appears to allege that she was transferred "to another office within the G-3" after completing work on a particular project. (Doc. 24-9 at 5). Elsewhere, Plaintiff says that she was moved out of the

---

[4] To the extent one may read into Plaintiff's amended complaint additional claims sounding in discrimination or retaliation that fall outside Title VII, such claims are preempted by Title VII, which is the only avenue through which federal employees may pursue employment discrimination claims. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 835 (1976). Title VII also reflects an exception to the requirement that all employment disputes between federal employees and the United States Government be handled under the CSRA.

11

Case 6:23-cv-03139-MDH   Document 70   Filed 05/28/24   Page 11 of 13

G-3 Publications Section on or about June 17, 2019. (Doc. 24-9 at 35). Plaintiff's factual allegations surrounding these alleged transfers are threadbare and permit at best a limited understanding of Plaintiff's version of events. Even accepting as true Plaintiff's allegations, it remains unclear whether Plaintiff believes any of these alleged transfers to be the basis of a Title VII discrimination claim. Recently, the Supreme Court held, in the context of an alleged discriminatory transfer under Title VII, plaintiffs need not show harm suffered proved significant, but merely that the plaintiff was treated worse. *Muldrow v. City of St. Louis, Missouri*, 144 S. Ct. 967, 974 (2024). In *Muldrow*, the Supreme Court acknowledged that the phrase "terms or conditions," at least in the context of Title VII, is not narrow in the "contractual sense" and "covers more than the economic or tangible." *Id*. (internal citations omitted). At the same time, the Court reaffirmed that "a transferee must show some harm respecting an identifiable term or condition of employment." *Id*. In the present case, Plaintiff has not pled sufficient facts to allow this Court to understand whether she believes any of the alleged transfers reflect discriminatory action. Further, to the extent Plaintiff has intended to allege a Title VII discriminatory transfer claim, Plaintiff has nether alleged nor otherwise shown that she has exhausted administrative remedies pertinent to any such allegation. For these reasons, any possible Title VII discriminatory transfer claim is dismissed.

## CONCLUSION

For foregoing reasons, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Amended Complaint is dismissed with prejudice.

**IT IS SO ORDERED**.

DATED: May 28, 2024    */s/ Douglas Harpool*
**DOUGLAS HARPOOL**
**UNITED STATES DISTRICT JUDGE**